Filed 11/12/13  In re Allen P. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re ALLEN P., JR., a Person Coming Under the Juvenile Court Law. | D063989 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3597) |
| v. | |
| AMANDA D., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Amanda D. appeals a juvenile court order requiring her visitation with her son, Allen P., Jr., (Allen) be supervised. She contends substantial evidence does not support the order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 17, 2012, the Tulare County social services agency petitioned under Welfare and Institutions Code section 300, subdivisions (a) and (b) on behalf of two-year-old Allen on the basis of domestic violence between Allen's father, Allen P., Sr., (the father), and Amanda. The father had thrown a remote control device across a room and struck Allen's sister, three-year-old Madison D., on her face, causing bruising. Amanda had a history of obtaining restraining orders against the father and then allowing him back into the family home. The petition also alleged there had been juvenile dependency proceedings concerning Allen's sibling, Levi D., in 2005. Amanda successfully reunited with Levi, but then had not protected him from physical abuse by the father, and the father had struck Levi in the head multiple times. The petition also alleged Amanda had neglected Levi's hygiene and medical needs, had been unable to manage his out-of-control behavior and had not attended conjoint therapy or followed treatment recommendations for him. Each parent had been arrested for inflicting corporal injury on Levi and had served time in custody. Levi was living with a relative in Texas.

2

When police officers took Madison into protective custody, Amanda became combative and was arrested for resisting arrest. Allen was visiting the father in San Diego County at the time.[1] The father brought him to Tulare County so he could be taken into protective custody. The court ordered Allen detained in out-of-home care and ordered supervised visits for each parent. The social worker recommended denying reunification services for Amanda because she had received many months of services in Levi's case. The social worker recommended offering six months of services to the father.

On March 28, 2012, the Tulare County Juvenile Court found the allegations of the petitions to be true. It declared Allen a dependent of the court and ordered reunification services for the father, but denied them for Amanda.

The social worker reported Amanda appeared to have difficulty controlling her anger. She yelled and used derogatory names during telephone calls with the social worker. She had weekly supervised visits with Allen and repeatedly tried to bring her boyfriend or other individuals to the visits. Madison and Allen's relative caregivers reported Madison and Allen acted up after visits with Amanda.

Allen and the father had visits only about once each month because of the distance between San Diego County and Tulare County. Their visits were appropriate and

_____

[1] Amanda and the father had been awarded joint legal custody of Allen; Amanda was given physical custody and the father had one week of unsupervised visitation each month.

progressed to being unsupervised. The father also participated in a 52-week domestic violence prevention program.

In June 2012, Amanda's parental rights to Levi were terminated. In August, she lost her parental rights to Madison. Meanwhile, the father made progress in services and had positive visits and telephone conversations with Allen. In September, Allen was placed with him in the home of the paternal grandparents. In October, the San Diego County Juvenile Court accepted transfer of the case from the Tulare County Juvenile Court. Amanda moved from Tulare County to Southern California and had weekly visits with Allen. The grandparents reported she had difficulty taking on a parental role and did not have control over Allen during visits.

In January 2013, the father began an in-home parenting program. He also continued his participation in the domestic violence program. He was employed and spent his free time with Allen. In February, Amanda moved to the State of Washington for a short time, but then returned to California. Her visits with Allen became more regular, and Allen was excited when they got to see each other. Staff at the visitation center reported their visits were positive and affectionate.

The social worker reported Amanda had been offered 43 months of services in Levi's cases. Amanda's therapist in Tulare County reported she had been diagnosed with "Depressive Disorder" and "Borderline Personality Disorder with Dependent Personality Traits" and with seizures. The therapist said Amanda was resistant to therapy.

At a review hearing on April 30, 2013, Amanda's counselor testified he worked as a therapeutic behavioral specialist and supervised cases and trained therapists for an

4

agency in Temecula. He also was Amanda's pastor. He was not a licensed social worker or a credentialed therapist. He had met with Amanda for one hour each week for about four months and said they were addressing her issues of depression and anxiety. He said she had become less emotional and was calmer than when their counseling sessions began. He said he was aware she had lost two children to adoption but, in his opinion, she had never posed a risk to them, and he did not see a problem with her having Allen in her care without supervision. He was not aware she had been diagnosed with a borderline personality disorder, and he had not received copies of the juvenile court documents concerning Levi and Madison or the earlier reports concerning Allen.

Amanda testified she received disability income for a seizure disorder, with which she had been diagnosed in 2007. She took medication for the seizure disorder and for depression. She said she did not know she had been diagnosed with a borderline personality disorder. She said she had addressed some of her past domestic violence issues with her counselor and would rely on him for help with anger issues.

After considering the evidence and argument by counsel, the court found the father had made substantive progress with the provisions of his case plan, Amanda had made some progress, and there no longer was a protective issue. The court advised Amanda to participate in therapy with a licensed therapist, complete a domestic violence program and develop a safety plan for what to do if she had a seizure when Allen was in her care. It awarded Amanda and the father joint legal custody, the father sole physical custody, ordered supervised visitation for Amanda and terminated jurisdiction.

DISCUSSION

5

Amanda contends substantial evidence does not support the order requiring her visitation be supervised. She argues her visits with Allen have been positive, and there was no substantial evidence she had a borderline personality disorder, no showing how such a diagnosis would pose a danger to Allen and no evidence her seizure disorder ever interfered with her ability to care for him. She also argues since Allen's dependency began because of the father's domestic violence and Allen now has been placed with the father, it makes no sense to restrict her visitation.

*Legal Principles*

In making visitation orders, the juvenile court must consider the child's best interests. (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) It must consider the totality of the child's circumstances when making decisions regarding the child. (*In re Chantal S.* (1996) 13 Cal.4th 196, 201.) The court's orders regarding visitation may be reversed only upon a clear showing of an abuse of discretion. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 465.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

*Application*

Amanda has not shown the court abused its discretion by requiring her visits with Allen continue to be supervised. She had previously been arrested and served time in custody for inflicting corporal injury on a child. She yelled at the social workers,

6

showing she had difficulty controlling her anger. She shouted at Allen during some visits, and when Allen and Madison were first removed from her care, their caregivers reported they showed negative behavior after visits with her. She had been offered many months of services in Levi's cases, but reunification was not successful, and her parental rights to Levi and Madison had been terminated. Her previous therapist had said she was resistant to therapy, and her previous parenting instructor was worried about her ability to implement the skills presented in class. The court expressed concern that her borderline personality disorder condition was difficult to treat and encouraged her to participate in therapy with a licensed therapist, complete a domestic violence program and develop a safety plan for what actions would be taken if she had a seizure when Allen was in her care.

Amanda has not shown the court abused its discretion by requiring her visits with Allen continue to be supervised.

DISPOSITION

The order is affirmed.

NARES, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

7